**E-FILED**
Friday, 14 January, 2011 03:13:26 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Readiness Management Support L.C., | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 09-4003 |
| | ) | |
| JESCO Construction Corp.; and County of Henderson, Illinois; and Village of Gulfport, Illinois, | ) ) ) | |
|     Defendants | ) | |

# ORDER

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the Court are the following related motions: Joint Motion to Amend Consent Judgment and Dismiss Count V by Readiness Management Support L.C. (herein, "RMS") and Henderson County (#118); Joint Motion for Entry of Judgment under Rule 54(b) by RMS and Henderson County (#121); Motion for Emergency Determination by JESCO (#124); and Motion for Leave to File Reply by JESCO (#130).

## MOTION FOR LEAVE TO FILE REPLY #130

The Motion for Leave to file a reply is GRANTED. The Court notes that JESCO has already filed its reply rather than waiting for leave of court. In the interests of efficiency, the Court will not require refiling of the reply but will deem it to be filed as of the date of this Order. In the future, pleadings requiring leave of court should be filed as exhibits to motions.

1

**REMAINING MOTIONS**

*Background*

This litigation arose from the severe flooding of Henderson County and the Village of Gulfport in 2008. The County entered into a dewatering contract with JESCO that, unfortunately, was not bonded. JESCO subcontracted with, *inter alia,* RMS. The County has applied for FEMA funds with which to pay for the services it received. The pending motions center around FEMA funds that are referred to as PW1524 Funds. Although not dispositive, there was an earlier disbursement of FEMA funds, referred to as PW 1523 Funds, that plays into the events.

*PW1523 Funds*

In March 2010, the County received FEMA funds related to construction of a temporary levee in the amount of $309,038.40. Henderson County contributed its own funds, bring the total amount to $343,376.02. These funds are referred to as PW 1523 funds.

Because the County's contract was with JESCO, the PW 1523 Funds were released by the County to JESCO, with a written agreement between the two parties that the amount of this payment check would operate as a set-off against any award ultimately entered in this litigation on the claims of JESCO against the County.

In the fall of 2010, the County learned of allegations by one Leon Roy in a lawsuit filed in the Southern District of Mississippi against JESCO president John Shavers. In that lawsuit, it was alleged that the PW1523 funds were not distributed to PW1523 subcontractors who performed the work but were instead mis-used for Shavers' own personal benefit. That case was settled, and the County also believes that some of the PW1523 Funds were used to pay that settlement. During this same time frame, the County also began to receive reports that JESCO had not paid subcontractors for the PW1523 work.

The County has asked JESCO for documentation of how the PW1523 funds were disbursed. Although JESCO never provided those documents to the County, JESCO has filed in this Court[1] an affidavit from Shavers.

*PW1524 Funds*

In February of 2009, FEMA sent Henderson County an initial PW1524 Estimate showing $2,628,525.32 in eligible costs, with the Federal share[2] of $2,365,672.79. About a year later, on March 18, 2010, FEMA sent an approved PW1524, which mentioned the earlier estimate and noted that the County had submitted an additional $13,208,691.76 in project costs. The March PW approved $6,924,302.67 in eligible costs, obligating the Federal share of $6,231.872.41 to Henderson County. This March PW included "FEMA verified invoices" that included the entire amount of RMS's original invoices in the amount of $4,527,303.70. The PW also included a statement that the County's contract with JESCO "violated nearly every relevant provision of Federal procurement regulations" and that JESCO's labor and equipment schedules were "unreasonable on their face."

Some of the documentation the County had submitted was questioned by IEMA, and FEMA undertook a second review of the project. On July 29, 2010, FEMA sent a revised PW1524. The July PW identified $2,721,711.64 in eligible costs, with a Federal share of $2,449,540.58 to Henderson County. This new amount included $2,435,484.14 attributable to RMS and its subcontractor SWS, as well as expenditures attributed to 3 other entities: R.E. Huber ($208,374.07), D&S ($72,478.43), and ATC ($5,375.00). It listed no obligated funds for JESCO, and it repeated its criticisms of the contract between the County and JESCO. Henderson County has appealed both the initial reduction

---

[1]This affidavit is attached as Exh. H to Doc. #124.

[2]The Federal share is the actual grant amount; the County is responsible for the remainder.

from $13 million to $6.9 million and the subsequent reduction of $6.9 million to $2.4 million. The appeal process remains ongoing.

On August 6, 2010, RMS served a Notice of Statutory Lien on public funds under Illinois law. 770 ILCS 60/23. RMS did not commence proceedings to enforce the lien within 90 days, so the lien is now terminated. 770 ILCS 60/23(c)(5).

On August 6, JESCO filed a motion styled "Request for Emergency Determination Under Local Rule 7.1A)A1)(b) of Motion ... for Order to Turn Over Funds." (Doc. #70). A Rule 11 letter was sent by RMS counsel on August 11. JESCO withdrew its motion on August 13. (See Doc. #74). According to JESCO, withdrawal was due to the lien; according to RMS, it was in response to the Rule 11 letter.

Before July 22, 2010, Henderson County received the PW1524 Funds - in the amount of $2,449,540.48 - from FEMA and IEMA. On July 22, 2010, the County issued a check, payable to JESCO, in the amount of $2,449,540.48 and sent the check to counsel for the County; the check remains in his possession.

RMS and Henderson County have reached a settlement of the claims between them, in the amount of $4.527,303.60, the full principal amount owed to RMS under its contract with JESCO. JESCO has admitted[3] that it is indebted to RMS in that amount.

---

[3]See JESCO's response (Doc. #84, p.2 section II, in which it admits all facts) to RMS's motion for summary judgment.

### *The pending motions*

On Oct. 28, an Order (#117) was entered, granting RMS's and Henderson County's joint and unopposed[4] motion for entry of a Consent Judgment that would reflect their settlement agreement. The Order also mooted the summary judgment motion (#68) and several other minor motions.

The motion and consequently the Order did not specify whether the consent judgment was as to Count V (Breach of 3d party beneficiary contract) or Count VI (unjust enrichment) or both. On October 29, these two parties filed a Motion to Amend the Consent Judgment (#118) asking that judgment be entered as to Count VI only; accompanying that motion was a stipulation to dismiss Count V with prejudice. Neither JESCO nor Gulfport filed opposition to the Motion to Amend.

In reviewing that motion, the Court determined that the parties should have briefed the question whether entry of a judgment was proper under Rule 54(b), because the proposed consent judgment did not address all claims and all parties. The parties were ordered to brief that question. RMS and Henderson filed that brief jointly as a Motion for Entry of Judgment.

Ordinarily, entry of a consent judgment to reflect settlement is not controversial. Here, however, it is. Rather than weighing in on the Rule 54(b) issue, and despite the fact that JESCO initially "took no position" on the settlement, JESCO now asks that the Court defer ruling on the issues relating to the Consent Judgment and instead grant the relief sought in its motion for emergency determination, namely an order that the funds paid by FEMA to the County be paid over to JESCO.

Henderson County opposes the motion for the emergency determination. The County explains

---

[4]JESCO had filed a pleading stating that it took "no position" on this motion; in the current pleadings, JESCO states that it "intends to change from 'no position'...to objecting to such Consent Judgment". This change in position is addressed below.

5

that it is obligated under FEMA Rules and Regulations to withhold payment to a contractor or subcontractor who has failed to comply with financial guidelines and record keeping systems. It is the County's position that JESCO is such a contractor. In addition, the County states that it has already been warned by the FBI that is must comply with all the rules with respect to awards of FEMA money.

RMS characterizes JESCO's Motion for Emergency Determination as "an improper attempt to circumvent proper procedure in order to seize assets for JESCO's benefit and the benefit of no-parties (and to the exclusion of RMS)." The response quotes from a March 2009 FEMA report which includes FEMA's objection that According to RMS, $2,435,484.14 is the approved amount attributable to RMS; the amount includes none of the billings generated by JESCO.

## *Discussion*

JESCO' motion asserts that it is unconscionable for the County to delay any longer the payment of the FEMA funds to it, so that its subcontractors can be paid. In support of its contention that this Court can and should schedule a telephone hearing prior to the motion hearing set on January 19 in order to hear this "non-summary judgment" matter, JESCO cites Fed.R.Civ.P. 1 and 64, Local Rule 7.1(A)(1)(b), and 28 U.S.C. 1651.

Fed.R.Civ.P. 1 provides that the Rules be construed and administered to secure the just speedy and inexpensive determination of every action and proceeding. Local Rul 7.1(A)1)(b) provides that every motion may be scheduled for determination by telephone conference call. While these rules would certainly permit the court to set a telephone hearing, neither of them mandate that the court do so. In this case, where a hearing is already scheduled and where the status quo is not in jeopardy, there is no reason to move the hearing up.

Fed.R.Civ.P. 64(b) enumerates the various remedies available to federal district courts.

Section 1651 of Title 28 states that the court may issue any writ necessary or appropriate in aid of jurisdiction and agreeable to usage and principles of law. Once again, these authorities speak to the discretion of the Court. Neither mandate any particular action.

The lone case cited by JESCO is Lechman v. Ashkenazy Enterprises, Inc., 712 F.2d 327 (7th Cir. 1983). In that case, the Court of Appeals held that the district court had properly relied on Fed.R.Civ.P. 64 in seizing property to secure satisfaction of judgment. That case affords no support for JESCO's position: there is no judgment that JESCO is seeking to enforce.

JESCO relies heavily (in its reply brief) on the affidavit with attachment from its president John Shavers, According to Shavers, the spread sheet attached to his affidavit shows that it has paid out nearly $852,000 to "individuals and companies who furnished work in connection with JESCO's contract with Henderson County." JESCO makes the rather astounding argument that because it has paid out money to its subcontractors, it has "earned" the FEMA funds and is entitled to "decide and determine how that money may be spent ... like any other income it receives from any other contract source." That argument is wholly belied by the extensive regulations that govern contracts with governmental entities and disbursement of FEMA funds.

Neither the affidavit nor the spread sheet delineate which of those payments were for PW 1523 work and which was for other work. According to the County, the spreadsheet demonstrates that only $27,433.75 of the $343,376.02 of the money paid to JESCO in April has been paid to the PW1523 subcontractors. Even if one assumes that the balance of the money was paid for sub-contractors' work on PW 1524 projects, FEMA has clearly and strongly indicated that the documentation for JESCO's expenditures is woefully lacking. Nothing has been filed in this Court that addresses those concerns.

Jesco asserts, however, that FEMA documents demonstrate that the FEMA funds are due and

7

payable to JESCO. For example, JESCO states that the PW1524 issued in June (Exh.A to JESCO's motion) shows that "both FEMA and IEMA agree that $2,721,711.64 is due and payable to Jesco." That is not, however, what the exhibit shows. The dollar amount is correct, but nothing on this document mentions JESCO at all.

JESCO also points to an August 11, 2010 letter from the County to JESCO stating that, but for RMS's Notice of Public Lien, the County would send the check to JESCO's attention. That letter, however, was sent prior to the concerns that have been raised about the manner in which JESCO allegedly used the PW1523 Funds. This letter certainly provides no basis for the relief sought by JESCO at this time.

Finally, JESCO cites 44 C.F.R. 13.21(b),(c) for the proposition that the County must pay the FEMA funds to JESCO. This Regulation simply states the general policy of FEMA that any time between transfer of funds and disbursement of funds be minimized. There is nothing in that Regulation that mandates any particular payment at any particular time.

In addition to these identified deficiencies in support for JESCO's motion, Henderson County points to various regulations that tie its hands with respect to these funds. Regulations set forth in its response set standards for sub-grantees and cost-type contracts." 44 CF$ 13.1 et seq. These standards require that there be complete disclosure, record-keeping, accountability and source documentation, as described in 44 cf4 13.40 through 13.44. The awarding agency may review the adequacy of the same. 44 C.F.R. 13.20(b)(6), (b)(7), and (c). The methods of payments are described in 44 C.F.R. 13.21. Payments are limited to allowable costs or reasonable fees or profits. 44 C.F.R. 13.22(a)(1)(and (2). Payments are to be withheld if these conditions are not met. 44 C.F.R. 13.21(g); 44 C.F.R. 13.43. These regulations apply not only to the County but to its contractors and subcontractors as well. Enforcement of the requirements may be accomplished by disallowance of

improper costs; suspension of the award, withholding future awards or other legal remedies. 44 cf4 13.42. Enforcement actions are appealable. 44 C.F.R. 13.43(b).

As Henderson County points out, these provisions allow withholding of the PW1524 Funds temporarily. First, in light of the pending appeal, any failure by the County to pay only "reasonable"" costs could lead to adverse results in the appeal. Second, the County is obligated to enforce the reporting requirements, and that is what it is doing by withholding the funds. Finally, the County has already been warned that it must strictly comply with these regulations or risk criminal charges.

Despite its protestation to the contrary, JESCO motion is in effect a motion for partial summary judgment. It is presented in a format that is inconsistent with the requirements of Local Rule 7.1D, and it fails to meet the standard demanded by Fed.R.Civ.P. 5. It has cited absolutely no apposite statute or case that would mandate the relief it seeks at this time, and it has not addressed in any way to the obligations of the County under the Federal Regulations. JESCO's motion is denied.

With respect to the motions relating to the settlement between RMS and the County, JESCO asserts that it is changing its position from "no position" to opposing the settlement. Its opposition (#125), however, is limited to its now-rejected request discussed above. That opposition carries no weight.

Nonetheless, the Court has an obligation to determine whether a judgment should enter. Having reviewed the brief on Rule 54(b), the Court concludes that there is nothing in that Rule which would prevent entry of consent judgment. Entry of judgment as to fewer than all claims under Rule 54(b) requires that (1) there be separate claims; (2) there is a final decision as to at least one but fewer than all of the claims; and (3) there is no just reason for delay.

As a general rule, the reason for entering judgment as to fewer than all claims in a given case

is to create a "final and appealable" order that is certified for immediate appeal. See, e.g., Scott v. Conn, - F.3d -, Case No. 02-1831 *1 (7th Cir. 2002); Granack v. Continental Cas. Co., 977 F.2d 1143 (7th Cir. 1992). In this case, however, there is no need for an immediate appal: the settlement agreement and the proposed consent judgment include a prohibition against appeal by the County. The Consent Judgment would serve the purpose of finalizing a non-appealable settlement..

Moreover, the amount of the settlement is based on concrete and uncontested documentation of the amount of RMS's invoices. It is not speculative, nor does it constitute a windfall.

Entry of the amended Consent Judgment is proper, and the motion for entry of judgment is granted.

## CONCLUSION

As stated herein, the Joint Motion to Amend the Consent Judgment and to Dismiss Count V (#118) is GRANTED. The Joint Motion for Entry of Final Judgment (#121) is GRANTED. The Clerk is directed to enter judgment in favor of Readiness Management Support and against Henderson County as to Count VI and to dismiss Count V with prejudice.

JESCO's Motion for Leave to File a Reply (#130) is granted. JESCO's Motion for Hearing for Emergency Determination (#124) is DENIED.

ENTERED ON January 14, 2011

                            s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE