UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Readiness Management Support L.C., | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 09-4003 |
| | ) | |
| JESCO Construction Corp.; and County of Henderson, Illinois; and Village of Gulfport, Illinois, | ) ) ) | |
| 333    Defendants | ) | |

**ORDER AND OPINION**

Now before the Court are JESCO Construction Corp.'s Motion for Partial Summary Judgment (#54) and Motion for Oral Argument (#55). The motions are fully briefed, and I have carefully considered the arguments and evidence advanced by the parties. As explained below, the Motion for Summary Judgment is DENIED and the Motion for Oral Argument is DENIED.

**SUMMARY JUDGMENT GENERALLY**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

1

**DISCUSSION**

The only issue presented by this motion is whether the contract between JESCO and Henderson County is a "unit price" contract or a "cost plus" contract. The motion does not ask for a determination of what amount is due under the contract or to rule on affirmative defenses. It is simply a request for the Court to characterize the contract in question so that the parties can complete discovery and prepare for trial aware of the Court's ruling on this element.

As Henderson County points out, issues have been raised regarding the contract's validity and enforceability, as well as to JESCO's performance of its obligations. Those issues are not presented in the instant motion. For purposes of this Order, the agreement in question will be referred to as the "Contract," and the validity of the Contract will be assumed, but neither that assumption nor use of the word "contract" in this Order shall be construed as a ruling on such issues. Moreover, because issues relating to contract formation, performance, and the like are wholly immaterial to the very narrow issue presented by this motion, facts relevant only to such issues are not included in the statement of Undisputed Facts contained herein.

**UNDISPUTED FACTS**

This case arose out of catastrophic flooding in Henderson County and the Village of Gulfport in 2008. These two governmental bodies[1] utilized the services of a number of companies to dewater the affected areas. Various agreements were signed, and significant amounts of work was performed.

---

[1] The Village Board of the Village of Gulfport unanimously authorized the Henderson County Board to act as agent for Gulfport "in matters relating to the recent flooding and subsequent disaster declaration." Exh. 4 to Doc. #54 at p.23. The two governmental entities are therefore treated as one in this Order, unless a specific reason to do otherwise is noted.

The expectation of all involved was that the costs of the dewatering efforts would be borne by FEMA; as of this date, that expectation has not been realized.

This litigation involves one of the companies - JESCO - and one of its subcontractors - RMS - retained by Henderson County. The instant motion involves the agreement between JESCO (referred to as "Contractor") and Henderson County (called "Client"). The document setting out the agreement is entitled "Work Order Contract for Emergency Services." (Exh. M[2], Doc. #54). In pertinent part, that Contract provides that JESCO would perform services for the Clients:

> in accordance with the terms and conditions contained in this AGREEMENT and as described in individual work orders that shall be issued for each engagement or Project. Work orders issued under this AGREEMENT shall contain a description of the services (the Scope of Work) and shall state the compensation (the Fee) to be paid to Contractor by Client, and shall include a Schedule for completing the services. Each work order so issued shall become a part of this AGREEMENT. Client acknowledges that Contractor will develop the Scope of Work, Fee, and Schedule for each engagement or Project based on available information and various assumptions. Client further acknowledges that adjustments to the schedule or fee may be necessary based on the actual circumstances encountered by Contractor in performing the services.

Payment for services rendered was governed by the *Compensation* provision, which provides that payment will be "in the manner set forth in individual work orders." The section captioned "*Fee Definitions*" reads:

- Lump Sum - a fixed price amount for the scope of services described
- Unit Rates - units of service multiplied by billing rates for each unit
- Reimbursable Expenses:
    - Subcontracted Services - project related services provided by other parties to Contractor and a markup to cover Contractor's related expenses
    - Direct Project Expenses - actual expenses incurred in connection with the Project that are not otherwise recovered in the Lump sum or Unit Price rates

---

[2]JESCO refers to the Contract as Exhibit J to this motion. With one crucial exception, the substance of Exhibit J is identical to that of Exhibit M: Exhibit J does not include reference to Exhibits B and C, while Exhibit M does. It appears in JESCO's Statement of Undisputed Facts and in Henderson County's response thereto that Exhibit J was the initial version of the Contract. The final version, Exhibit M, was apparently re-executed about a week after the original (although dated the same); it added reference to and incorporation of those exhibits. The provisions quoted herein are identical in both versions.

3

John Shavers, President of JESCO, and two members of the Henderson County Board executed the agreement. Beneath the parties' execution on Page 3 of the final version of the Contract, the following provision appears:

> The following exhibit(s) is/are a part of this AGREEMENT:
> Exhibit A - *Work Order*
> Exhibit B - *Unit Rates*
> Exhibit C - *Equipment Rates*

Exhibit A is titled "Work Order No. 1 . The "Scope of Work" is defined as "Any and all Emergency Disaster Services necessary to restore Henderson County (including the City of Gulfport), Illinois during the Disaster Declaration..." The Schedule of Work section states "See Attached Schedule," and the Fee section states "See Attached Fee Schedule." This Work Order was signed by the same signatories as the Contract.

Exhibit B is a 4-page document titled "Labor Rates." It consists of a table. Each row of the table shows a category of labor; the various columns are "level"; "ST"(which the Court presumes means "standard time"); "OT" (which the Court presumes means "overtime"); and Holidays. For example, the one row on the table shows that a "mid" level chemical Engineer makes $149.50 ST, $206.25 OT, and $263.00 Holiday.

Exhibit C is an 8- page document titled "Equipment Rates." It too consists of a table. The rows are divided into categories (e.g. "pick up trucks"). Within each category, each row shows a specific piece of equipment (e.g. "02 Fd F250 Crew Cab"). For each piece of equipment, there are self-explanatory columns for the following[3] information: Qty; Hourly land; and Hourly water. Following Exhibit C are three separate "Statement of Work Orders." (Doc. #54,Exh. 2 p.20 ff). These work orders

---

[3]There is also a column for "Monthly." This column is blank throughout the document.

describe the scope of work JESCO was to perform and set a "not to exceed" amount for each. Work Order 1, signed by JESCO on 7/18/08 and by Henderson County on 7/24/008, contains a "not to exceed" amount of $12,302,101.00 for the 30 day period; this amount was broken down on an attached "Budget Worksheet." Work Order 2 was signed on the same dates as Work Order 1; it contains a "not to exceed" amount of $7,859,676.00. Work Order 3, signed by the County on 7/30/08 and by JESCO on 7/24/08, contains a not to exceed amount that is handwritten in; the handwritten amount is not readable on the exhibit provided to the Court.

Each of the three Work Orders contains the following provision:

> Payment(s) for such services shall be in accordance with the Contract Agreement and the Task Order Scope (Attachment A) and the Budget Worksheet (Attachment B).

## DISCUSSION

This is a diversity case, so the Court applies federal procedure and state substantive law. Rules of contract interpretation are treated as substantive law. See, AM Internat'l Inc. v. Graphic Mgt. Assoc., Inc., 44 F.3d 572, 576 (7th Cir. 1995).

Under Illinois law, the primary objective in construing a contract is to give effect to the intent of the parties. Village of S. Elgin v. Waste Mgmt. of Ill., Inc., 810 N.E.2d 658, 670 (Ill.App. 2004); Hampton v. Ford Motor Co., 561 F.3d 709, 714 (7th Cir.2009). Illinois follows the objective theory of intent, whereby the court looks first to the written agreement and not to the parties' subjective understandings. Newkirk v. Village of Steger, 536 F.3d 771, 774 (7th Cir. 2008). "The status of a document as a contract depends on what the parties express to each other and to the world, not on what they keep to themselves." Skycom Corp. v. Telstar Corp., 813 F.2d 810, 814-15 (7th Cir.1987). Thus, contractual language is not to be interpreted in a way contrary to the plain, obvious, and generally

5

accepted meaning of its terms. Krilich v. Am. Nat'l Bank & Trust Co. of Chicago, 778 N.E.2d 1153, 1164 (Ill.App.2002).

A standard principle of contract law is that an unambiguous agreement is enforced as written, and there is no need for construction or inquiry as to the parties' intentions. Hampton, 561 F.3d at 714; P.A. Bergner & Co. v. Lloyds Jewelers, Inc., 492 N.E.2d 1288 (Ill.1986). Interpretation is to be based on what the parties have expressed in the written document, and not on what they have kept to themselves. Hampton, 561 F.3d at 714.

A contract is ambiguous if its terms may reasonably be interpreted in more than one way, Krilich, 778 N.E.2d at 1164; Air Safety Inc. v. Teachers Realty Corp., 706 N.E.2d 882 (Ill.1999), but it is not rendered ambiguous simply because the parties disagree upon its proper construction, Hampton, 561 F.3d at 714; Reynolds v. Coleman, 527 N.E.2d 897 (Ill.App.1988). Rather, an ambiguous contract is "an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning." Hampton, 561 F.3d at 714.

The parties disagree on whether to characterize this contract as a "unit price contract" or a "capped time and materials" contract. In its motion, JESCO asserts that it is a "unit price contract" or a "fixed, unit price contract." This assertion is based not on any legal definition of "unit price contract." The motion contains not one piece of binding legal authority (or any legal authority at all) to support the contention that this is a proper characterization of this Contract. Rather, the argument that the contract is a "unit price contract" is based on the deposition testimony of Henderson County's State's attorney. In his testimony, the State's Attorney for the County "concluded that the basis for payment under the contract is unit prices, not to exceed the amounts stated in the individual work

orders." (#55, Undisputed Facts, ¶ 28). Is that what a "unit price contract is? The motion insists that it is, but no legal authority is provided.

Henderson County's response is not much more helpful, admitting as it does that the distinction between a unit price contract and a capped time and materials contract may in this case be a distinction without a difference. At any rate, the County does not dispute the mathematical formula that JESCO sets forth in its motion for calculating amounts due under the contract, and the court is pointed to no possible significance to the distinction in what the contract is called or how it is characterized.

Under these circumstances, pigeonholing the Contract into a particular type would appear to assist no one. If there is an important distinction, it certainly has not been brought to the Court's attention, and the Court is not obligated to and will not develop arguments for a party.

I therefore find it unnecessary to do what JESCO requests under these circumstances. I conclude that what this Contract is called is immaterial, because the parties agree (and are bound by that agreement) on the formula for calculation of amounts due under the Contract, keeping in mind, of course, that there are other matters (such as the enforceability of the contract or the affirmative defenses raised by the County and the Village) that may affect the end result of the calculation.

## CONCLUSION

The motion for partial summary judgment (#54) is therefore DENIED as stated herein. There being no need for oral argument, the motion for oral argument (#55) is also DENIED.

ENTERED ON March 14, 2011

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE