UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| Readiness Management Support L.C., <br>                        Plaintiff <br>    v. <br><br>JESCO Construction Corp.; and County of Henderson, Illinois; and Village of Gulfport, Illinois, <br> 333                   Defendants | Case No. 09-4003 |

**ORDER AND OPINION**

Now before the Court is the Motion for Partial Summary Judgment (#64) filed by Henderson County. The motion is fully briefed, and I have carefully considered the arguments of the parties. As explained herein, the motion is GRANTED.

**SUMMARY JUDGMENT GENERALLY**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

**INTRODUCTION**

For purposes of this motion only, Henderson County assumes that the written agreement executed by Henderson County and JESCO is the full and final agreement of those two parties regarding the emergency disaster relief services JESCO was to perform on behalf of the County. In this motion, Henderson County seeks judgment as to the enforceability of one particular term in that

agreement.

The term in question, captioned "Payment Terms" provides: "Contractor shall submit invoices at least once per month for services performed and client shall pay the full invoice amount within 30 days of the invoice date. Contractor shall be entitled to a 2% per month administrative charge in the event of payment delay."

Jesco's cross claim against Henderson County seeks damages due to delay in payment, including this 2% charge. The invoices submitted to Henderson County total in principal $24,901,142.91. JESCO's estimate of the amount due for the administrative charge, beginning 30 days after the date of the last invoice, or on October 12, 2008 would be just under $6 million annually. Henderson County asserts that this provision is a "penalty," which is not enforceable under Illinois law.

The agreement in question provides that it is governed by "the laws of the state where the services are performed." The parties do not disagree that this means Illinois law governs interpretation of this agreement.

## ILLINOIS LAW

In interpreting contract provisions that specify damages, Illinois law draws a distinction between liquidated damages, which are enforceable, and penalties, which are not. Checkers Eight Ltd. Partnership v. Hawkins, 241 F.3d 558, 561 -562 (7th Cir. 2001), citing Lake River Corp. v. Carborundum Co., 769 F.2d 1284, 1289 (7th Cir.1985). See also, Bauer v. Sawyer, 134 N.E.2d 329, 333-34 (Ill.1956). To be valid under Illinois law, a provision for liquidation of damages must "be a reasonable estimate at the time of contracting of the likely damages from breach, and the need for estimation at that time must be shown by reference to the likely difficulty of measuring the actual

2

damages from a breach of contract after the breach occurs. If damages would be easy to determine then, or if the estimate greatly exceeds a reasonable upper estimate of what the damages are likely to be, it is a penalty." Lake River, 769 F.2d at 1290, citing M.I.G. Investments, Inc. v. Marsala, 414 N.E.2d 1381, 1386 (1981). Accord, Checkers, 241 F.3d at 562, citing American Nat'l Bank & Trust Co. of Chicago v. Regional Transp. Auth., 125 F.3d 420, 440 (7th Cir.1997).

Illinois courts have identified several additional factors useful in determining whether a clause is a penalty or a liquidated damages provision. When the only purpose of a clause is to secure performance of the contract, the provision is an unenforceable penalty. Checkers, 241 F.3d at 562, citing American Nat'l Bank & Trust, 125 F.3d at 440; Med+Plus Neck & Back Pain Ctr., S.C. v. Noffsinger, 726 N.E.2d 687, 693 (Ill.App.2000). As one Court has explained it, "The damages provided must be a specified amount for a specific breach to be paid *as an alternative to performance and not as a penalty for nonperformance.*". Arduini v. Bd. of Educ., 418 N.E.2d 104, 109 (Ill.App.1981), rev'd on other grounds, 441 N.E.2d 73 (Ill.1982), quoting Builder's Concrete Co. of Morton v. Fred Faubel & Sons, Inc., 373 N.E.2d 863, 869 (Ill.App. 1978) [emphasis added].

If a single sum is specified as damages for any and all breaches regardless of their relative gravity, the clause is probably not a reasonable attempt to estimate actual damages and thus is likely a penalty. Checkers, 241 F.3d at 562, citing Raffel v. Medallion Kitchens of Minn., Inc., 139 F.3d 1142, 1146 (7th Cir.1998); Lake River, 769 F.2d at 1290.

Whether a provision is a penalty clause is an issue of law. Checkers, 241 F.3d at 562. Doubtful cases should be classified as penalties. Lake River, 769 F.2d at 1290, citing Stride v. 120 West Madison Bldg. Corp., 477 N.E.2d 1318, 1321 (Ill.App.1985); Pick Fisheries, Inc. v. Burns Electronic Security Services, Inc., 342 N.E.2d 105, 108 (Ill.App.1976).

3

In Checkers, the court was reviewing a provision that would have required defendants to pay an additional $150,000 if installments were untimely paid. The court found the provision to be an unenforceable penalty, noting that in the absence of extraordinary circumstances, actual damages caused by late payments could easily be estimated using interest rates. The interest that could have accrued was "minimal, probably less than one hundred dollars." 241 F.3d at 562. The proposed amount was excessive compared to those estimated actual damages and was payable regardless of whether the delay was one day or one year, the $150,000 would be due. Id. There was no purpose for this provision other than ensuring timely payments. Id. Each of these factors pointed to the conclusion that the provision was an unenforceable penalty.

In Lake River, the court was reviewing a contract that required one of the parties to install new equipment that cost $89,000. To assure that it would recover the cost of that system plus a profit, the party insisted that the contract include a liquidated damages provision. This provision stated that if a guaranteed minimum amount of the product was not ordered and shipped by the end of the 3 year contract, it could invoice the other party the difference between that guaranteed minimum and the amount actually shipped.

Judge Posner found that, under Illinois law, this provision was a penalty, not a liquidated damages provision. He reasoned that the costs of performance were saved if the contract was breached but that those savings were not reflected in the provision. As a result, depending on when in the life of the contract the breach occurred, the provision generated more - much more - than the lost profits from the breach. In fact, those profits would range from 130% to 400% of the profits that were originally contemplated. Generation of a windfall such as this was inconsistent with the legal principles underlying liquidated damages provisions.

Judge Posner compared the contractual language in <u>Lake River</u> with the language at issue in <u>Arduini v. Bd. of Educ.</u>, 418 N.E.2d 104 (Ill.App.1981), rev'd on other grounds, 441 N.E.2d 73 (Ill.1982). There the plaintiff was a teacher whose contract provided that he would be docked 4% of his contract salary if he resigned before the end of the school year. The <u>Arduini</u> court held that the provision was a proper liquidated damages clause. The amount was a modest fraction of the contract price, and the cost to the school of an untimely resignation would be difficult to measure.

The provision in the agreement before this Court contains many of the same indicators as did the language in Checkers. If applied, the results are more - much more- than an estimation of the cost of non-payment. The 2% per month - or $1300 per day - bears no resemblance whatsoever to the time value of money, and unlike the percentage in <u>Arduini</u>, this administrative charge cannot be described as a "modest fraction" of the contract price. The provision is contained in the contractual paragraph dealing with payment, demonstrating that the sole purpose of this provision was to guarantee that the County performed its only significant contractual duty - timely payment of invoices. It does not provide an alternative to payment; it imposes a penalty for non-payment. unlike the percentage in <u>Arduini</u>, imposition of this administrative charge is not a "modest fraction" of the contract price.

This is not to denigrate the significance of the lack of prompt payment in this case. JESCO and its subcontractors have incurred substantial harm resulting from this delay. But at the time of contracting, this harm was foreseeable to JESCO. JESCO's principals knew that the County was counting on FEMA funds and that the County did not have millions of dollars of its own for ready dispersal. Nonetheless, this particular "administrative charge" is overbearing to an extent that it simply must be characterized as penal in nature. It is unenforceable.

This does not leave JESCO with no remedy. The victim of a breach is entitled to common law damages. See, <u>Lake River</u>, 769 F.2d at 1292-3. What those common law remedies are is not before the Court at this time.

**CONCLUSION**

For the reasons stated herein, the Motion for Partial Summary Judgment (#64) is GRANTED. The Administrative Charge provision in the contract between JESCO and Henderson County is unenforceable.

ENTERED ON March 14, 2011

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE