IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| READINESS MANAGEMENT SUPPORT, L.C., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.: 4:09-cv-04003-JAG |
| JESCO CONSTRUCTION CORPORATION, COUNTY OF HENDERSON, IL and VILLAGE OF GULFPORT, IL, | ) ) ) ) ) ) |
| Defendants. | ) |

**PLAINTIFF READINESS MANAGEMENT SUPPORT L.C.'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF
FINAL JUDGMENT AGAINST DEFENDANT JESCO CONSTRUCTION
CORPORATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(b)**

Plaintiff Readiness Management Support, L.C. ("RMS"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 54(b) and 58(d), hereby respectfully submits its Memorandum in Support of its Motion for Entry of Final Judgment Against Defendant JESCO Construction Corporation Pursuant to Federal Rule of Civil Procedure 54(b).

In addition, JESCO also respectfully requests that the Court's Rule 54(b) order clarify the amount of RMS's judgment against JESCO (including the 2% per month administrative charge).

**I.     INTRODUCTION**

In this action, RMS brought claims against JESCO and Henderson County, alleging non-payment for the millions of dollars of work that RMS performed to de-water Henderson County.

RMS settled its dispute with Henderson County, entered into a consent judgment, and filed a Joint Motion for Entry of Final Judgment ("Joint Rule 54(b) Motion") [ECF Doc. #121], which this Court granted in its Order dated January 14, 2011 ("Rule 54(b) Order Against Henderson County") [ECF Doc. #139].   This Court then entered final judgment against

Henderson County on January 18, 2011 (the "January 18 Judgment") [ECF Doc. # 141].

On March 14, 2011, this Court issued its Order and Opinion entering summary judgment in RMS's favor against JESCO "in the amount of $4,527,303.60 plus [2% per month] administrative charges as calculated under the RMS Contract" [ECF Doc. #157] (the "RMS Summary Judgment Against JESCO" at pp. 7-8). RMS now seeks to finalize the RMS Summary Judgment Against JESCO pursuant to Rule 54(b), including so that it can begin the process of collection and execution.

## II.  LEGAL ANALYSIS

Rule 54(b) provides in pertinent part as follows:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, cross-claim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). The main purposes for finalizing a judgment pursuant to Rule 54(b) include permitting immediate appealability, and allowing the process of collection on a judgment to commence. Bank of Lincolnwood, 622 F.2d 944, 949 n. 7 (7th Cir. 1980) (citations omitted). RMS has obtained judgments against both Henderson County and JESCO, and seeks to bring finality to its lawsuit and begin collecting on the judgment that has been two years in the making.

Entry of judgment under Rule 54(b) requires that three prerequisites be met. "First, the action must involve separate claims. Second, there must be a final decision as to at least one of these claims. Third, the district court must expressly determine that there is "no just reason for delay." Stearns v. Consolidated Management, Inc., 747 F.2d 1105, 1108 (7th Cir. 1984) (citations omitted). In this case, all three prerequisites are satisfied.

### A.  This action involves separate claims.

RMS's Complaint included six counts: two against Henderson County (Count V for

Breach of Third-Party Beneficiary Contract and Count VI for Unjust Enrichment) and four against JESCO (Count I for Breach of Contract, Count II for Suit on Account, Count III for Suit on Account Stated, and Count IV for Quantum Meruit).  *See* RMS's Complaint ("RMS's Complaint") [ECF Doc. #1].  This Court has finalized the judgment against Henderson County on Count VI, and has dismissed Count V.  (Rule 54(b) Order Against Henderson County, at 10).  Concurrently with this Motion, RMS is moving to dismiss Counts II, III and IV against JESCO without prejudice.  Thus, RMS's only count remaining against JESCO is RMS's breach of contract claim (Count I), which was addressed in the RMS Summary Judgment Against JESCO.

RMS's breach of contract claim against JESCO is separate and distinct from the remaining claims in this action—JESCO's cross-claims[1] against Henderson County and Gulfport—thus satisfying the first prerequisite for finalizing a judgment under Rule 54(b).

The Seventh Circuit has provided "rules of thumb" to provide guidance on what constitute separate "claims for relief" in the context of Rule 54(b).  Local P-171 v. Thompson Farms Co., 642 F.2d 1065, 1070-71 (7th Cir. 1981).  In order for claims to be separate for the purpose of Rule 54(b), separate recovery must be possible on each claim.  Id.  Thus, mere variations of a legal theory do not constitute separate claims.  Id. (citations omitted).  "Claims can be separate [for the purpose of Rule 54(b)] even if they have some factual overlap." Minority Police Officers Association of South Bend v. City of South Bend, 721 F.2d 197, 200 (7th Cir. 1983).  Another general rule is that "each contract is a 'claim' for the purposes of Rule 54(b)."  FDIC v. Elefant, 790 F.2d 661, 664 (7th Cir. 1986) (citing Walker v. Maccabees Mutual Life Ins. Co., 753 F.2d 599, 601 (7th Cir. 1985)).  The Seventh Circuit has illustrated this with the

---

[1] JESCO's cross-claims against Henderson County and the Village of Gulfport are for Breach of Contract (Cross-Claim Counts I and IV), Suit on Account (Cross-Claim Counts II and V), and Unjust Enrichment (Cross-Claims Counts III and VI).  (JESCO's Amended Answer and Cross-Claims ("JESCO's Cross-Claims") [ECF Doc. #25]).

following hypothetical. "When A sues B and C on separate contracts, and the district court enters judgment in A's favor against B, the fact that C has a 'similar' dispute pending will not prevent A's execution of judgment against B, or B's appeal." Elefant, 790 F.2d at 664. This is the very situation before the Court in this Motion.

In this case, there are two contracts at issue: RMS's contract with JESCO (the "RMS Contract"), and JESCO's contracts with Henderson County and Gulfport (collectively the "JESCO Contracts"). While there is some factual overlap in the instant case (namely, that the subject matter of both contracts related to cleanup efforts regarding the 2008 floods in Henderson County), the claims are nonetheless separate and distinct.

RMS's contract claim against JESCO relates to JESCO's failure to pay RMS pursuant to the RMS Contract; JESCO's payment to RMS was not contingent on JESCO receiving payment from Henderson County, or on Henderson County receiving any money from FEMA. (RMS Summary Judgment Order, at p. 3). The RMS Contract is governed by Delaware law. (RMS Summary Judgment Against JESCO, at p. 4). Finally, this Court has entered summary judgment in favor of RMS and against JESCO for $4,527,303.60, plus the 2% contractual administrative charges under the RMS Contract.

JESCO's cross-claims, on the other hand, are related to Henderson County's and Gulfport's alleged failure to pay pursuant to the JESCO Contracts. The JESCO Contracts are governed by Illinois law. (RMS Summary Judgment Against JESCO, at p. 6). Finally, JESCO's cross-claims seek approximately $23,930,448.91 in damages, and this Court has held that the 2% administrative fee provision in the JESCO Contracts is unenforceable. *See* Court's Order, dated March 14, 2011, at p. 6. [ECF Doc #156].

These claims involve entirely different contracts, which are governed by different state law. One of the contracts contains an enforceable administrative fee provision, while the other

4

one does not. Thus, this Court should find that this action involves separate and distinct claims.

      **B.**      **The Court issued a final decision on RMS's Breach of Contract Claim.**

The RMS Summary Judgment Against JESCO constitutes a final decision as to RMS's claims against JESCO, and there are no other claims pending against JESCO.

For a judgment to be "final" for the purposes of Rule 54(b), "it must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is an 'ultimate disposition of an individual claim entered in the course of a multiple claims action." Indiana Harbor Belt Railroad Co. v. American Cyanamind Co., 860 F.2d 1441, 1444 (7th Cir. 1988). The RMS Summary Judgment Against JESCO is a decision upon a cognizable claim for relief because it held that JESCO breached the RMS Contract, and granted judgment in favor of RMS in the amount of $4,527,303.60 plus the 2% per month administrative fees as provided for in the RMS Contract.

The administrative charge calculation is mechanical and uncontroversial, and the Court outlined the necessary elements of the calculation in the RMS Summary Judgment Against JESCO. Thus, the Court has issued a final decision for the purposes of Rule 54(b). *See* Production and Maintenance Employees' Local 504 v. Roadmaster Corp., 954 F.2d 1397, 1401 (7th Cir. 1992) (holding that if the only remaining calculations are mechanical and uncontroversial, a judgment is final for the purpose of appeal). Moreover, Section III of this Memorandum clarifies RMS's request for the Court to specify the amount of administrative fees that have accrued to date.

      **C.**      **There is no just reason for delay.**

There is no precise test that can be satisfactorily or easily applied in every case to determine whether there is "no just reason for delay" regarding finalizing the entry of judgment; thus, the Seventh Circuit has held that the district courts should feel free to "consider any factor

that seems relevant to a particular action, keeping in mind the policies the rule attempts to promote." Bank of Lincolnwood, 622 F.2d at 949 (citing 10C Charles Alan Wright, et al., *Federal Practice and Procedure*, § 2659, at 77-78 (1973)). The Seventh Circuit has identified the following non-exhaustive list of important factors that may be considered in determining whether there is no just reason for delay:

> (1) The relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

Id. An analysis of these factors establishes that there is no just reason for delay.

### 1. The relationship between the adjudicated and unadjudicated claims establishes that there is no just reason for delay.

As discussed above in Section II.A., the claim by RMS against JESCO and the cross-claims by JESCO against Henderson County and Gulfport involve separate contracts, are governed by different laws, and are for different amounts of money. Although both contracts are related to the flood cleanup work in Henderson County, the mere fact that "a cross-claim arises out of the same transaction as the principal claim does no more than restate a requirement of a proper cross-claim, and there is no doubt that **Rule 54(b) permits separate treatment of the original claim and a cross-claim**." Bank of Lincolnwood, 622 F.2d at 950 (citing Cold Metal Process Co. v. United Engineering & Foundry Co., 351 U.S. 445, 452 (1956)) (emphasis added).

JESCO's required payment under the RMS Contract was not contingent on Henderson County receiving FEMA funds or on Henderson County paying JESCO. Now that RMS's claim against JESCO has been fully adjudicated, the only remaining issues in the case are whether Henderson County and Gulfport breached their contract with JESCO, and if so, the amount of

money Henderson County and Gulfport owe JESCO for the breach. Accordingly, the relationship, or lack thereof, between RMS's fully adjudicated claim against JESCO and JESCO's unadjudicated claim against Henderson County and Gulfport supports a finding that that there is no just reason to delay finalization of RMS's judgment.

> **2.  There is no possibility that future developments in the district court could moot RMS's need to finalize its judgment.**

RMS is seeking to finalize its judgment pursuant to Rule 54(b) so that it can begin the execution process and collect on its summary judgment against JESCO. RMS has no remaining issues in this case, and there is nothing left for the district court to determine with respect to RMS. Thus, future developments in this litigation between JESCO and Henderson County/Gulfport will not affect RMS's post-judgment issues.

Moreover, as discussed above in Section II.A., the factual and legal issues involved in RMS's claim against JESCO are separate and distinct from the issues in JESCO's cross-claims against Henderson County/Gulfport. Thus, even if JESCO decides to appeal the RMS Summary Judgment Against JESCO, future developments in the case between JESCO and Henderson County/Gulfport will not affect any of the issues on appeal.

> **3.  If the Court finalizes RMS's judgment against JESCO under Rule 54(b), there is no chance that a reviewing court would have to consider the same issue more than once.**

As discussed above in Section II.A., RMS's summary judgment against JESCO and JESCO's cross-claims against Henderson County and Gulfport involve separate contracts, are governed by different laws, and are for different amounts of money. If an appeals court were to take up any issues regarding RMS's judgment against JESCO, those issues would be distinctly different and would not share any significant facts or points of law in common with the issues relating to JESCO's cross-claims against Henderson County/Gulfport.

7

The findings the Court will need to make to adjudicate JESCO's remaining cross-claims are different from the findings the Court made in granting RMS summary judgment. Because JESCO admitted that it owes RMS the amount due under the RMS Contract (and in fact, Henderson County also admitted the principal amount as part of the Consent Judgment with RMS), the amount that RMS billed JESCO under the RMS Contract is not at issue in JESCO's cross-claims against Henderson County/Gulfport. Although RMS was a subcontractor of JESCO, JESCO did not directly pass on RMS's bills to Henderson County. Instead, JESCO billed Henderson County for the work that RMS performed by using JESCO's own rates pursuant to JESCO's rate sheets (which were a part of the JESCO Contracts). *See* JESCO's Motion for Partial Summary Judgment ("JESCO's Summary Judgment Motion"), ¶¶ 28, 30. Thus, even if JESCO decides to appeal RMS's judgment, there will be no significant factual or legal findings that overlap with the issues being adjudicated in JESCO's cross-claims.

### 4. There is not a claim or counterclaim that could result in a set-off against RMS's judgment against JESCO.

Aside from the judgment that RMS is seeking to finalize, the only remaining claims in this case are JESCO's cross-claims against Henderson County and Gulfport. This Court previously denied JESCO's attempt to amend its pleadings to add a counterclaim and affirmative defenses against RMS. *See* Order, dated October 28, 2010 [ECF Doc. #113]. Thus, there are no claims or counterclaims pending against RMS that could result in a set-off against RMS's judgment against JESCO.

### 5. The miscellaneous factor of judgment collection considerations weighs in favor of RMS's judgment being finalized pursuant to Rule 54(b).

The Seventh Circuit has recognized that in addition to the four main factors discussed above, courts can also look to miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of completing claims, and expense. Bank of

8

Lincolnwood, 622 F.2d at 949. In the instant case, the most relevant miscellaneous factor weighing in favor of Rule 54(b) finality is economic considerations. The Seventh Circuit has noted that "the process of collecting upon an adjudicated claim can only commence after a final judgment has been entered." Id. When RMS and Henderson filed their Joint Motion for Entry of Judgment Pursuant to Rule 54(b) the parties stated:

> In addition, the need to avoid further delay argues strongly in favor of entering a final judgment under Rule 54(b) certification. Here, the parties have been in litigation since February 2009 for work that was performed in the summer of 2008. To date, RMS has not received any payment for the significant amount of work it performed. Additionally the Court recently ordered that the trial be delayed until January of 2012. If RMS is not permitted to have its judgment against Henderson County finalized until after JESCO and Henderson County resolve their claims, RMS would be extremely prejudiced because it would have to wait at least another 14 months until it could enforce the judgment.

Joint Rule 54(b) Motion, p. 6. Thereafter, this Court held that there was "no just reason for delay" and that a judgment should enter pursuant to Rule 54(b). Rule 54(b) Order Against Henderson County, at p. 9.

This same rationale also applies to the RMS Summary Judgment Against JESCO. RMS's claims against JESCO have been pending since 2009, and RMS performed its work in the summer of 2008. RMS has not received any payments from JESCO.[2] Moreover, if RMS's judgment against JESCO is not finalized under Rule 54(b), RMS will have to wait until JESCO's cross-claims go to trial in January of 2012.[3] It would be extremely prejudicial for RMS not to be

---

[2] RMS recently registered its finalized judgment against Henderson County in the Circuit Court of Henderson County pursuant to 735 ILCS 12/501, and garnished $2,449,540.48 from a Henderson County bank account pursuant to Illinois law.

[3] Upon information and belief, Henderson County submitted its latest appeal to FEMA on March 15, 2011, IEMA has sixty days to review the appeal and submit it to FEMA, and then FEMA has ninety days to review it and issue a decision. Thus, a ruling on Henderson County's FEMA funds appeal is expected by the end of the summer or early fall. This fact, however, does not

able to collect on its judgment against JESCO for another 13 months. *See* Bank of Lincolnwood 622 F.2d at 952 (holding that when "the delay in adjudicating the remaining cross-claim promise[s] to be considerable" the just economic interest of the party that obtained the judgment weighs heavily in favor of finalizing the judgment under Rule 54(b)).

Of particular concern to RMS is the fact that there have already been two other lawsuits against JESCO referencing the work performed in Henderson County. The first, Clark v. JESCO Construction Corp., et al., Case No. 4:2010cv04053, is pending in the Central District of Illinois, and the Plaintiff seeks $1.02 million from JESCO for breach of contract. The second, Roy v. JESCO Construction Corp., el al., Case No. 1:2010cv00422, was filed in the Southern District of Mississippi, and sought $210,000.00 in contract damages, $50,000.00 for fraudulent representations, $50,000.00 for defamatory statements, treble damages, punitive damages, and RICO damages. The Roy case has now settled and the terms of the settlement agreement are confidential, but this Court has noted Henderson County's belief that some of the PW1523 funds were used to pay that settlement. (Rule 54(b) Order Against Henderson County, at p. 2). Neither of these two lawsuits have been pending for as long as RMS's lawsuit with JESCO.

In addition, JESCO has alleged that it owes substantial amounts of money to other subcontractors (although those other subcontractors have not filed suit against JESCO). *See* Affidavit [of John Shavers] in Support of Emergency Motion of JESCO, at ¶ 7 [ECF Doc. #142-2] ("Jesco owes its subcontractors and suppliers millions of dollars more than it has already paid"). In fact, as this Court has noted, JESCO alleges that it has paid out nearly $852,000 to other subcontractors. (Rule 54(b) Order Against Henderson County, at p. 7). This Court should finalize RMS's summary judgment so it can begin collecting now; otherwise RMS might lose its

---

affect RMS's request to finalize judgment against JESCO, because JESCO's payment to RMS under the RMS Contract is not contingent on the receipt of any funds from FEMA.

ability to collect if other creditors obtain judgments or settlements and collect against JESCO.

### 6. It would not be overly burdensome for JESCO to appeal RMS's judgment during the pendency of this lawsuit.

As discussed above, RMS seeks to finalize its summary judgment against JESCO so that it can begin execution. A Rule 54(b) order also starts the clock for JESCO to make a decision about whether it should pursue an appeal.

Although this factor is not specifically enumerated in Bank of Lincolnwood, it is notable that it would not be overly burdensome for JESCO to potentially be in the position of pursuing an appeal at the same time that it is litigating its cross-claims against Henderson County and Gulfport. If JESCO decides to appeal RMS's judgment, the issues involved are narrow. In particular, because JESCO admitted to RMS's Statement of Undisputed Material Facts, JESCO cannot take issue with any of the factual findings the Court made in the RMS Summary Judgment Against JESCO. (*See* RMS's Motion for Summary Judgment Against JESCO on Count I of RMS's Complaint, "RMS's Summary Judgment Motion") at ¶ 15 [ECF Doc. #66]; JESCO's Response to RMS's Motion for Summary Judgment, at § II (admitting all facts set forth in the RMS Summary Judgment Motion) [ECF Doc. #84]).

Moreover, the litigation of the remaining cross-claims is at an advanced stage. The parties in this action have already conducted extensive discovery, and there is currently a discovery cut-off date of March 31, 2011, a dispositive motion deadline of August 1, 2011, final pretrial on December 9, 2011, and a jury trial starting on January 19, 2012.

In any event, RMS should not be prejudiced and be forced to delay the enforcement of its judgment merely because JESCO would be involved in two separate pieces of litigation if it chooses to appeal.

### III. RMS REQUESTS THAT THE COURT SET FORTH THE AMOUNT OF ADMINISTRATIVE FEES TO DATE IN ITS ORDER AND FINAL JUDGMENT.

In the RMS Summary Judgment Against JESCO, this Court entered summary judgment in RMS's favor and against JESCO "in the amount of $4,527,303.60 plus [2% per month] administrative charges as calculated under the RMS Contract". (RMS Summary Judgment Against JESCO at pp. 7-8). In order to clarify the amount of the administrative charges (the "Administrative Charges") (to assist in execution among other reasons), RMS respectfully requests that this Court enter an order both finalizing the judgment against JESCO and setting forth the amount of the administrative charge to date. RMS is herewith submitting a proposed order.

JESCO has admitted, and this Court has already adjudged, that JESCO is justly indebted to RMS in the principal amount of $4,527.303.60, that RMS is entitled to a 2% per month administrative charge (including when the Administrative Charge started to accrue), and that "The Administrative Fee start[ed] to accrue 30 days after the respective invoice dates of the Invoices, accruing 30 days after July 23, 2008 for Invoice 1 [in the principal amount of $1,661,409.60], and 30 days after August 28, 2008 for Invoice 2 [in the principal amount of $2,865,894.00]." (RMS Summary Judgment Against JESCO at pp. 3-5; RMS's Motion for Summary Judgment at ¶¶13, 17, 23, 25, 26; JESCO's Response to RMS's Motion for Summary Judgment, at § II (admitting all facts set forth in the RMS Summary Judgment Motion)). The determination of the 2% per month administrative charge is thus a simple mechanical matter of performing the necessary calculations.

The principal amount of Invoice 1 (dated July 23, 2008) is $1,661,409.60, and two percent of this amount is $33,228.19.[4] Thus, the Administrative Charges have been accruing at a

---

[4] $1,661,409.60 x 0.02 = $33,228.192.

rate of $33,228.19 per month beginning on August 23, 2008. As of March 23, 2011, RMS is thus entitled to 32 months of the Administrative Charges for Invoice 1. Accordingly, as of March 23, 2011, the Administrative Charges for Invoice 1 amount to $1,063,302.08,[5] and continue to accrue at a rate of $33,228.19 per month.

The principal amount of Invoice 2 (dated August 28, 2008) is $2,865,894.00, and two percent of amount is $57,317.88.[6] Thus, the Administrative Charges have been accruing at a rate of $57,317.88 per month beginning on September 28, 2008. As of March 28, 2011, RMS is thus entitled to 31 months of the Administrative Charges. Accordingly, as of March 28, 2011, the Administrative Charges for Invoice 2 amount to $1,776,854.28,[7] and continue to accrue at a rate of $57,317.88 per month.

Accordingly, the total amount currently owing is as follows:

| | |
|---|---|
| Principal: | $4,527,303.60 |
| Administrative Charges for Invoice 1 (as of March 23, 2011): | $1,063,302.08 |
| Administrative Charges for Invoice 2 (as of March 28, 2011): | $1,776,854.28 |
| **Total (as of March 28, 2011):** | **$7,367,459.96** |

## IV.   CONCLUSION

For the reasons set forth above, this Court should issue an order granting this motion, expressly determining that there is no just reason for delay, directing the Clerk to enter final judgment pursuant to Rule 54(b) and Rule 58 in favor of RMS and against JESCO in the amount of $7,367,459.96, which includes $4,527,303.60 in principal and $2,840,156.36 in

---

[5] 32 months x $33,228.19 = $1,063,302.08.

[6] $2,865,894.00 x 0.02 = $57,317.88.

[7] 31 months x $57,317.88 = $1,776,854.28.

Administrative Charges as of March 30, 2011, with additional Administrative Charges continuing to accrue for Invoice 1 at a rate of $33,228.19 per month from March 23, 2011, and additional Administrative Charges continuing to accrue for Invoice 2 at a rate of $57,317.88 per month from March 28, 2011, until full satisfaction of the judgment, and granting such other and further relief as the Court deems just and proper.

    Respectfully submitted,

    POLSINELLI SHUGHART PC

    By: s/James P. Martin
        JAMES P. MARTIN (#06257436)
        100 S. Fourth St., Suite 1000
        St. Louis, MO 63102
        (314) 889-8000
        Fax No. (314) 231-1776
        jmartin@polsinelli.com

    ATTORNEYS FOR PLAINTIFF
    READINESS MANAGEMENT SUPPORT, L.C.

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 30, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

William M. Beadie
705 Montcalm Place
St. Paul, MN 55116
(651) 485-6275
Fax No. (651) 690-1859
wmbeadie@comcast.net
ATTORNEY FOR DEFENDANT
JESCO CONSTRUCTION CORP.

Rainer Lorenz
108 South Drive
Covington, LA 70433
(985) 264-2427
Fax No. (985) 892-8444
rainerlorenzatty@bellsouth.net
ATTORNEY FOR DEFENDANT
JESCO CONSTRUCTION CORP.

Scott P. McClintock
P.O. Box 605
Fourth and Warren Streets
Oquawka, IL 61469
(309) 867-4871
Fax No. (309) 867-2207
hendsaofc@9thjudicial.org
ATTORNEY FOR DEFENDANT
COUNTY OF HENDERSON

Matthew S. Clark
Krista E. Stalf
5600 North River Rd., Suite 600
Rosemont, IL 60018-5114
(847) 261-0700
Fax No. (847) 261-0714
mclark@khkklaw.com
kstalf@khkklaw.com
ATTORNEY FOR DEFENDANT
COUNTY OF HENDERSON

Ronald D. Stombaugh
1025 East Broadway
P.O. Box 766
Monmouth, IL 61462
(309) 734-3150
Fax No. (309) 734-7043
rstombau@maplecity.com
ATTORNEY FOR DEFENDANT
VILLAGE OF GULFPORT, ILLINOIS

Robert J. Noe
Fifth Avenue Building
1630 Fifth Avenue
P.O. Box 659
Moline, IL 61266-0659
(309) 797-0850
Fax No. (309) 764-1371
rnoe@bnpn.com
ATTORNEY FOR DEFENDANT
JESCO CONSTRUCTION CORP.

Troy D. Venner
220 N. Main St., Suite 600
Davenport, IA 52801
(563) 324-3246
Fax No. (536) 324-1616
tvenner@l-wlaw.com
ATTORNEY FOR PLAINTIFF

Gary M. Riebschlager
300 Fannin, Suite 200
Houston, TX 77002
(713) 225-1682
Fax No. (713)225-1785
gary.riebschlager@bcoonlaw.com
ATTORNEY FOR DEFENDANT
JESCO CONSTRUCTION CORP.

            s/James P. Martin

057391/131384-479726.7